United States District Court
Southern District of Texas
**ENTERED**
November 17, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KHAWAJA PARTNERS, LTD, | § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:14-CV-02975 |
| JETALL COMPANIES INC, *et al*, | § § § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendant Jetall Companies, Inc.'s ("Jetall") Motion for Partial Summary Judgment (Doc. #33), Plaintiff Khawaja Partners, Ltd.'s ("Khawaja") Response (Doc. #45), and Jetall's Reply (Doc. #46). After considering the arguments and the record in this case, the Court GRANTS Jetall's Motion.

### I.   BACKGROUND

This is a breach of contract case for the sale and development of real property. Plaintiff Khawaja owned a sixteen-unit, sixty-year-old apartment complex located at 208 and 210 Avondale Street in Houston, Texas ("the Avondale Property" or "the Property"). Doc. #33 at 1. On March 8, 2013, Khawaja conveyed the Property to Defendant Jetall under the terms of a Development Agreement. *Id.* The parties agree that the Avondale Property was worth approximately $750,000 at the time. Doc. #33 at 13; Doc. #45 at 9.

Under the Development Agreement, Jetall advanced $100,000 to Khawaja to clear title to the Avondale Property. Doc. #33-1. In return, Khawaja conveyed title to Jetall by general warranty deed. *Id.* If Jetall chose to develop the Avondale Property, Jetall would pay $750,000 (including the $100,000 advance) plus twenty-five percent of its profits to Khawaja upon

completion of development and sale. *Id.* If Jetall chose not to develop, it could terminate the agreement, at which point Khawaja would have to pay Jetall $100,000 plus a $50,000 fee within ten days. *Id.* Upon receipt of the money, Jetall would convey the Avondale Property back to Khawaja. *Id.* The contract did not include a time by which Jetall had to elect to develop or to return the Property.

The two-page Development Agreement contained the following merger clause and disclaimer of representations or warranties:

> This is the entire agreement between the parties on this subject matter and is not subject to any prior or contemporaneous oral or written agreements. The undersigned parties are not relying on any representations or warranties not expressed in this agreement and affirmatively state that they are relying only on their own judgment and expertise in deciding to enter into this transaction.

*Id.* Khawaja also agreed to convey clear title, warrant title, and indemnify Jetall against any and all challenges to title in the future. *Id.*

Both parties were represented by counsel in drafting and negotiating the Development Agreement. Doc. #33 at 6. Khawaja was represented by Omar Khawaja. Doc. #45 at 8. After the agreement was finalized, Jetall advanced the $100,000 to Khawaja, and Khawaja deeded the Avondale Property to Jetall.

On June 7, 2013, Khawaja repudiated the Development Agreement by filing suit against Jetall in state court, seeking a declaratory judgment that the Development Agreement was a loan, not a sale. Doc. #33 at 2; *Khawaja Partners, Ltd. vs. Jetall Companies Inc.*, Case No. 2013-34178 in the 129th District Court of Harris County, Texas. Khawaja also filed a notice of lis pendens on the Property. Doc. #33 at 2.

In the state court lawsuit, Khawaja sought a declaratory judgment that the Development Agreement was intended to be a loan, not a sale. Doc. #33 at 2. Khawaja

claims that during the negotiation of the Agreement, Ali Choudri, the principal of Jetall, represented to Omar Khawaja that the transaction would be a loan. Doc. #45 at 8. However, nothing in the Development Agreement indicates that the transaction was intended to be a loan, and Choudri denies that it was intended to be one. Omar Khawaja was aware that the Development Agreement had a merger clause. *Id.*

In July 2013, Jetall borrowed $1,000,000 from George M. Lee and Serena Yu to fund development of the Avondale Property. Doc. # 33 at 17. The loan was secured by a deed of trust lien on the Property. Jetall also had the property replatted to allow for construction of town homes. Doc. #46 at 2.

After Khawaja sued to cancel the deed in state court, Jetall filed a counterclaim for breach of contract, among other claims. Doc. #33 at 2. Judge Michael Gomez of the Harris County District Court granted a Temporary Injunction in favor of Jetall enjoining Khawaja from interfering with Jetall's ownership of the property. *Id.* Judge Gomez held that the Development Agreement "calls for an outright conveyance of the Property and makes no mention of any loan, interest payment or security interest. The general warranty deed is an absolute conveyance, was properly recorded, and is enforceable." *Id.* at 3.

On September 10, 2013, Khawaja filed for bankruptcy. *Id.* Khawaja removed the state court action to the bankruptcy court in this District. Doc. #1, Case No. 13-03252. Again, Khawaja's argument that the Development Agreement was a loan was rejected, this time by Judge Isgur in bankruptcy court. *Id.* In bankruptcy court, Khawaja brought claims for violation of the Texas Security Act, fraudulent transfer, common law fraud, fraudulent inducement, usury, statutory fraud under Section 27.01 of the Tex. Bus. & Comm. Code, unjust enrichment, reformation of contract, violation of automatic

bankruptcy stay, determination of validity of George Lee and Serena Yu's lien, and fraudulent transfer as to Lee and Yu. Bankr. Court Docket Doc. #49-1.

On October 20, 2014, this Court withdrew the proceeding from the bankruptcy court, finding the district court to be the proper forum for the case. Doc. #2.[1] On September 11, 2015, Jetall moved for partial summary judgment, asking the Court to find that there is no genuine issue of material fact as to Khawaja's breach of contract and for summary judgment on Khawaja's claims. Doc. # 33. The Court agrees.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its

---

[1] The Bankruptcy Court submitted a report and recommendation to this Court for withdrawal of reference. In light of the questions raised by the Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) regarding bankruptcy court jurisdiction, the Bankruptcy Court found trial by the District Court to be the proper forum. Doc. #1.

resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56 burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### III.  ANALYSIS

Jetall moves for partial summary judgment on Khawaja's liability for breach of contract, with damages to be proven at trial. Jetall also moves for summary judgment on all of Khawaja's claims.

#### A. Jetall's Claim for Breach of Contract

Jetall argues that Khawaja breached the Development Agreement by repudiating the Agreement and filing a suit to cancel the deed. In Texas, the essential elements in a breach of contract claim are (1) the existence of a valid contract; (2) that the plaintiff performed or

tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

### 1. The Existence of a Valid Contract

The Development Agreement was a valid contract. It unambiguously conveyed the Avondale Property to Jetall under certain conditions. Jetall was to pay $100,000 in advance, and if it chose to develop the property, it would pay $750,000 plus twenty-five percent of its profits after development and sale. If Jetall chose not to develop, Khawaja would pay back the $100,000 plus a $50,000 fee. As promised, Jetall advanced Khawaja $100,000 and Khawaja conveyed the Avondale Property to Jetall. When Khawaja sued to stop Jetall's development and to cancel the deed three months later, it breached the terms of the Development Agreement.

Khawaja claims that the transaction was intended to be a loan, not a sale. But nothing in the Development Agreement indicates that to be the case. And as Judges Gomez and Isgur both held, Khawaja may not rely on parol evidence of Omar Khawaja's conversations with Ali Choudri to prove otherwise. Doc. #33-4, Doc. #33-5 at 6. Under the merger clause, the Development Agreement represented the entire agreement between the parties, and the parties disclaimed any reliance on representations or warranties outside of the Agreement. *See U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000) (citing *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997)).

Khawaja also argues that there was no "meeting of the minds" because the parties did not specify a time for performance—that is, a time by which Jetall had to choose to develop the Avondale Property or return it. Where a contract does not specify the time for performance, a party's obligation must be performed within a reasonable period of time under the circumstances

6 of 11

of the case. *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640-41 (5th Cir. 1983) (citing *R.E.E. DeMontluzin Co. v. New Orleans N.E. Railroad*, 116 La. 822, 118 So. 33, 35 (1928) (one to two years reasonable time in which to build railroad station and action brought forty years after contract entered into clearly barred by ten-year prescriptive period); *Owens v. Robinson*, 329 So.2d 766, 767 (La. App. 1976) (five-month delay too long under contract for delivery of cotton where time was of the essence); *Perrin v. Hellback*, 296 So.2d 342, 344 (La. App.), *writ denied*, 300 So.2d 184 (La. 1974) (failure to begin construction of building within two years constituted breach where contract called for completion of building within three years)).

Here, the Court finds that three months was a reasonable time within which Jetall could decide whether to develop the Avondale Property. That was all the time Khawaja gave Jetall before filing suit. In addition, there is no dispute that Jetall elected to develop the Property. Jetall encumbered the Property with a $1,000,000 loan to pay for development. It had the property replatted to allow for construction of town homes. Doc. #46 at 2. Indeed, Omar Khawaja admitted that he knew that Jetall wanted to develop the Property. Doc. #33-2 at 34.[2] Jetall offered to complete development within 18 months after Khawaja released its lis pendens. Doc. #46 at 3. Accordingly, the Court finds that Jetall acted within a reasonable timeframe in choosing whether to develop the Property, and thus a valid contract existed.

   2. *Performance*

Jetall performed under the contract by advancing $100,000 to Khawaja. Khawaja argues

---

[2] Additionally, Khawaja abandoned one of its claims—a usury claim—in reliance on Jetall's representation that it would develop the Property. Doc. #45 at 10. ("Based upon Jetall's representation to this and other courts that it has elected to develop the property and that the usurious clause 'has not and will not be invoked by Jetall,' Khawaja abandons its usury claim while reserving the right to pursue it should Jetall later reverse course.").

7 of 11

that Jetall's performance was not substantial because under the Development Agreement, full performance required that Jetall either develop the Avondale Property or return it. But again, Khawaja can hardly claim that Jetall failed perform when it was Khawaja itself that filed a lawsuit to stop development.

### 3. Breach

Khawaja breached by filing a notice of lis pendens and interfering with Jetall's development of the Property. The Development Agreement required Khawaja to convey clear title, warrant title, and indemnify Jetall against any and all challenges to title in the future. Doc. #33-1. In addition, the deed contains a warranty that requires Khawaja to "warrant and forever defend all and singular the said property unto Grantee [Jetall]." *Id.* at 3. Khawaja breached those provisions when it repudiated the Development Agreement. In addition, the Development Agreement had not yet been fully performed. Jetall had the right to develop the Avondale Property or to return it. Until one of those events had taken place, the Development Agreement was still in force, and Khawaja breached it by its repudiation.

### 4. Damages

In addition to the expense of defending this lawsuit, Jetall alleges that the lawsuit and notice of lis pendens has prevented Jetall from developing the Avondale Property. Jetall claims it has been damaged in the amount of $100,000 it paid to Khawaja under the Development Agreement; that it lost buyers for the five town homes it planned to build on the Property; that Khawaja collected rent from tenants of the Property that should have been paid to Jetall; and that Khawaja entered into new leases with tenants without the knowledge or consent of Jetall. Doc. #46 at 4; Doc. #21 at 13-14. Damages are a question for the trier of fact and Jetall will need to

that Jetall's performance was not substantial because under the Development Agreement, full performance required that Jetall either develop the Avondale Property or return it. But again, Khawaja can hardly claim that Jetall failed perform when it was Khawaja itself that filed a lawsuit to stop development.

### 3. Breach

Khawaja breached by filing a notice of lis pendens and interfering with Jetall's development of the Property. The Development Agreement required Khawaja to convey clear title, warrant title, and indemnify Jetall against any and all challenges to title in the future. Doc. #33-1. In addition, the deed contains a warranty that requires Khawaja to "warrant and forever defend all and singular the said property unto Grantee [Jetall]." *Id.* at 3. Khawaja breached those provisions when it repudiated the Development Agreement. In addition, the Development Agreement had not yet been fully performed. Jetall had the right to develop the Avondale Property or to return it. Until one of those events had taken place, the Development Agreement was still in force, and Khawaja breached it by its repudiation.

### 4. Damages

In addition to the expense of defending this lawsuit, Jetall alleges that the lawsuit and notice of lis pendens has prevented Jetall from developing the Avondale Property. Jetall claims it has been damaged in the amount of $100,000 it paid to Khawaja under the Development Agreement; that it lost buyers for the five town homes it planned to build on the Property; that Khawaja collected rent from tenants of the Property that should have been paid to Jetall; and that Khawaja entered into new leases with tenants without the knowledge or consent of Jetall. Doc. #46 at 4; Doc. #21 at 13-14. Damages are a question for the trier of fact and Jetall will need to

prove them at trial.

### A. Khawaja's Claims

#### 1. *Fraudulent Transfer*

Khawaja claims that the sale of the Avondale Property was a fraudulent transfer in violation of the Texas Uniform Transfer Act (TUFTA), Tex. Bus. & Com. Code § 24.005 or the federal fraudulent transfer statute, 11 U.S.C. § 548 (b). It provides that "[a] transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *Id.* "Reasonably equivalent value" is defined as including, "without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." Tex. Bus. & Com. Code Ann. § 24.004(d). Value is determined as of the transfer date. *Leibowitz v. Parkway Bank & Trust Co.*, 210 B.R. 298, 301–02 (N.D. Ill. 1997); *Mladenka v. Mladenka*, 130 S.W.3d 397, 407 (Tex. App.—Houston [14 Dist.] 2004, no pet.). Courts generally compare the value of the property transferred with the value of the property received in exchange for the transfer. *In re Sullivan*, 161 B.R. 776, 781 (Bankr. N.D. Tex. 1993).

Khawaja claims it did not receive reasonably equivalent value for the Avondale Property because it sold the Property to Jetall for $100,000, but the Property was worth approximately $750,000. But, that argument completely ignores the fact that the $100,000 was merely an advance, and if Jetall chose to develop the Property, it would pay $750,000 plus twenty-five percent of the profits to Khawaja. Or alternatively, Jetall would return the Property. Additionally, Khawaja has admitted that it received an

additional value of $400,000 because it was able to avoid losing the Avondale Property to foreclosure and to avoid a deficiency to a lender. Doc. #46 at 5. Accordingly, the Court is satisfied that the sale was one for reasonably equivalent value, not a fraudulent transfer.

### 2. Fraud

Khawaja brings claims for common law fraud, fraudulent inducement, and fraud in the sale of real estate, alleging that the sale of the Avondale Property was induced by Jetall's fraud.

"[T]he Texas Supreme Court [has] held that where, as here, a disclaimer of reliance in a contract is negotiated by parties of equal bargaining strength in an arm's length transaction, it is binding upon the parties and, as a matter of law, precludes claims of both fraudulent inducement and nondisclosure." *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 859 (E.D. Tex. 2004) *aff'd sub nom. Cronus Offshore, Inc. v. Kerr-McGee Oil & Gas Corp.*, 133 F. App'x 944 (5th Cir. 2005) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179-81 (Tex. 1997)). "[P]arties may disclaim reliance on representations[, a]nd such a disclaimer, where the parties' intent is clear and specific, should be effective to negate a fraudulent inducement claim. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011) (citations omitted). "[A]fter-the-fact protests of misrepresentation are easily lodged, and parties who contractually promise not to rely on extra-contractual statements—more than that, promise that they have in fact not relied upon such statements—should be held to their word." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008).

Here, the express language of the merger clause in the Development Agreement

10 of 11

conclusively negates the reliance element of Khawaja's fraud claim. Doc. #33-1 ("The undersigned parties are not relying on any representations or warranties not expressed in this agreement."). Accordingly, Khawaja cannot maintain a claim for fraud.

### 3. Other Claims

Khawaja also brings claims for unjust enrichment, reformation of contract, and violation of the automatic bankruptcy stay Under 11 U.S.C. § 362(k) as to Jetall. Those claims are disposed of by the Court's finding that the Development Agreement is valid. Because the Development Agreement was valid, Khawaja has no cause to claim unjust enrichment, seek to reform the contract, or claim a violation of the bankruptcy stay.

Finally, Khawaja has abandoned its claims for violation of the Texas Securities Act and for usury, and the Court will not address them here. Doc. #33 at 16.

## IV. CONCLUSION

For the reasons explained above, the Court GRANTS Defendant's Motion for Partial Summary Judgment.

It is so ORDERED.

NOV 1 6 2015
Date

THE HONORABLE ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE